CASE NO. 14-56593

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————

KOFI OBENG-AMPONSAH

*Plaintiff and Appellant,*

v.

RANDALL D. NAIMAN, an individual; PETER HETTINGA, an
individual; and CRAIG FINLAYSON, an individual

*Defendants and Appellees.*

————————

Appeal From The United States District Court,
Central District of California, Case No. EDCV 14-00635-GHK(PJW),
Hon. George H. King, District Judge and Hon. Patrick J. Walsh,
Magistrate Judge; Hon. Virginia A. Phillips, District Judge

————————

**ANSWER BRIEF BY APPELLEES PETER HETTINGA AND CRAIG
FINLAYSON**

————————

| | |
|---|---|
| * Darin L. Wessel (Cal. SBN 176220) | Ann Marie Thompson (Cal. SBN 152043) |
| MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP | SUNDERLAND McCUTCHAN, LLP |
| 550 West C Street, Suite 1900 | 11770 Bernardo Plaza Court, Ste. 310 |
| San Diego, California 92101 | San Diego, CA 92128 |
| Telephone: (619) 515-0269 | Telephone: (858) 675-7800 |
| Facsimile: (619) 515-0268 | Facsimile: (858) 675-7807 |

Attorneys for Appellees Craig Finlayson and Peter Hettinga

CASE NO. 14-56593

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

KOFI OBENG-AMPONSAH

*Plaintiff and Appellant,*

v.

RANDALL D. NAIMAN, an individual; PETER HETTINGA, an
individual; and CRAIG FINLAYSON, an individual

*Defendants and Appellees.*

————————————

Appeal From The United States District Court,
Central District of California, Case No. EDCV 14-00635-GHK(PJW),
Hon. George H. King, District Judge and Hon. Patrick J. Walsh,
Magistrate Judge; Hon. Virginia A. Phillips, District Judge

————————————

## ANSWER BRIEF BY APPELLEES PETER HETTINGA AND CRAIG FINLAYSON

————————————

i

## CORPORATE DISCLOSURE STATEMENT

Appellees Peter Hettinga and Craig Finlayson are individuals and

accordingly Fed. R. App. 26.1(a) does not apply.


Dated:  November 20, 2015          Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By:  _____/s/ Darin L. Wessel_____
      Darin L. Wessel
      Attorneys for Peter Hettinga and Craig
      Finlayson

ii

## TABLE OF CONTENTS

INTRODUCTION ................................................... 1

STATEMENT OF FACTS .......................................... 3

STATEMENT OF JURISDICTION ........................... 11

STATEMENT OF CASE ........................................ 12

    A. THE COMPLAINT ...................................... 12

    B. THE MOTIONS TO DISMISS AND ANTI-SLAPP ...................................... 21

    C. THE JUDGMENT OF DISMISSAL AND POST-JUDGMENT PROCEEDINGS .... 26

STANDARDS OF REVIEW ................................... 27

LEGAL DISCUSSION ......................................... 28

I.  THE DISTRICT COURT PROPERLY DISMISSED THE CASE BASED

    ON APPLICATION OF THE *ROOKER-FELDMAN* DOCTRINE ............................ 28

II.  OBENG-AMPONSAH'S CLAIMS ARE BARRED BY RES JUDICATA,

    COLLATERAL ESTOPPEL, AND THE DOCTRINE OF MERGER AND BAR .......... 29

III.  OBENG-AMPONSAH'S CLAIMS ARE BARRED BY CALIFORNIA'S

    LITIGATION PRIVILEGE. ........................................... 34

IV.  CALIFORNIA'S ANTI-SLAPP STATUTE AND THE SIMILAR

    FEDERAL NOERR-PENNINGTON DOCTRINE PROVIDE

    ALTERNATIVE GROUNDS TO AFFIRM THE JUDGMENT ................................ 37

V.   JOINDER IN NAIMAN'S ADDITIONAL ARGUMENTS IN SUPPORT OF

     AFFIRMING THE JUDGMENT ....................................................................... 37

VI.  THE SUBPEONA AND RELATED DOCUMENT PRODUCTION ISSUE IS

     NOT SUBJECT TO REVIEW ........................................................................... 39

CONCLUSION ..................................................................................................... 40

CERTIFICATION OF BRIEF FORMAT ..................................................................... 41

STATEMENT OF RELATED CASES ......................................................................... 42

CERTIFICATE OF SERVICE ................................................................................... 43

# TABLE OF AUTHORITIES

**CASES:**

*Bianchi v. Rylaarsdam*,

    334 F.3d 895, 898 (9th Cir. 2003) ......................................27

*Bisno v. Douglas Emmett Realty Fund 1988*,

    174 Cal.App.4th 1534, 1551-1552 (Cal. App. 2009) .........36

*Campbell v. Washington Dep't of Soc. & Health Servs.,*

    671 F.3d 837, 842 n.4 (9th Cir. 2011) ................................28

*Cedars-Sinai Medical Center v. Superior Court*,

    18 Cal.4th 1, 9-10 (Cal. 1998) ............................................35

*Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*,

    159 F.3d 412, 418 (9th Cir. 1998) ......................................28

*Columbus Line, Inc. v. Gray Line Sight-Seeing*

    *Companies Associated, Inc.,* 120 Cal.App.3d

    622, 628 (Cal.App. 1981) ...................................................31

*Cooper v. Ramos*,

    704 F.3d 772, 777 (9th Cir. 2012) ......................................28

*Financial Corp. of America v. Wilburn*,

    189 Cal.App.3d 764, 777 (Cal. App. 1987)........................ 35

*Forest Guardians v. U.S. Forest Serv.,*

    329 F.3d 1089, 1097 (9th Cir. 2003) ..................................28

*Kadar Corp. v. Milbury*,

    549 F.2d 230, 236 (1st Cir. 1977) ......................................39

*KL Group v. Case, Kay & Lynch,*

    829 F.2d 909, 918 (9th Cir. 1987) ......................................39

*Kougasian v. TMSL, Inc.,*

    359 F.3d 1136, 1139 (9th Cir. 2004) ..................................27

*Makaeff v. Trump Univ., LLC,*

    736 F.3d 1180, 1184 (9th Cir. 2013) ..................................37

*Maldonado v. Harris*,

    370 F.3d 945, 949 (9th Cir. 2004) ......................................27-28

*Manufactured Home Communities Inc. v. City of San Jose*,

    420 F.3d 1022, 1029 (9th Cir. 2005) ..................................27-28

*Merlet v. Rizzo,*

    64 Cal.App.4th 53, 65 (Cal. App. 1998) ...........................34

*Noel v. Hall*,

    341 F.3d 1148, 1163 (9th Cir. 2003) ..................................28

*Obeng-Amponsah v. Chase Home Fin., LLC*,

    2015 U.S. App. LEXIS 14636 (9th Cir. Unpub.

    Aug. 20, 2015) pet. rehg. den. Nov. 13, 2015 ...................1, 29, 33

*Obeng-Amponsah v. Mortgage Elec. Registration Sys.*,

    2013 Cal. App. Unpub. LEXIS 9204

    (Cal. App. 4th Dist. Dec. 19, 2013)....................................1, 29, 33-34

*Parklane Hosiery Co. v. Shore*,

    439 U.S. 322, 327 n. 5 (U.S. 1979) ....................................31

*Ribas v. Clark*,

    38 Cal.3d 355, 364 (Cal. 1985) .........................................35

*Rodgers v. Sargent Controls & Aerospace*,

    136 Cal.App.4th 82, 89-90 (Cal. App. 2006) .....................32

*Rubin v. Green*,

    4 Cal.4th 1187, 1194 (Cal. 1993) .......................................35-36

*Stratosphere Litig. LLC v. Grand Casinos, Inc.,*

    298 F.3d 1137, 1143 n. 3 (9th Cir. 2002) ...........................32

*Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency*,

    322 F.3d 1064, 1078 (9th Cir. 2003) ..................................32

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,

    546 F.3d 991, 1007 (9th Cir. 2008) ....................................38

*Thompson v. Cal. Fair Plan Ass'n*,

      221 Cal.App.3d 760, 767-768 (Cal. App. 1990) ...............35

*Tom Jones Enterprises, Ltd. v. County of Los Angeles*,

      212 Cal.App.4th 1283, 1294-1295 (Cal. App. 2013).........36-37

*United States ex rel. Barajas v. Northrop Corp.*,

      147 F.3d 905, 909 (9th Cir. 1998) ......................................32

*United States ex rel. Newsham v. Lockheed Missiles*

      *& Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999)...............38

*Vandenberg v. Superior Court,*

      21 Cal.4th 815, 828 (Cal. 1999) .........................................31

*Woodcourt II, Ltd. v. McDonald Co.,*

      119 Cal.App.3d 245, 249-250 (Cal. App. 1981) ..............35

**STATUTES, CODES AND RULES:**

18 U.S.C. § 1961 .......................................................... 10, 11

28 U.S.C. § 1291 .......................................................... 11

28 U.S.C. § 1331 .......................................................... 11

28 U.S.C. § 1367 .......................................................... 11

Cal. Civil Code § 47(b)................................................. 2, 22, 34, 38

Cal. Civil Code §2924................................................... 9-10

Cal. Code of Civil Procedure § 425.16 ........................................... 2, 21,

Cal. Code of Civil Procedure § 473 ................................................ 24

Cal. Commercial Code § 3301 ...................................................... 9

Fed. R. App. 3(a)(1) .................................................................. 12

Fed. R. App. 4(a)(4)(B)(i) ........................................................... 11

Fed. R. App. 4(a)(4)(B)(ii) .......................................................... 11

Fed. R. Civ. P. 6(a) ................................................................... 24

Fed. R. Civ. P. 26 .................................................................... 3

Fed. R. Civ. P. 12(b)(6) ............................................................. 21

Fed. R. Civ. P. 59(b) ................................................................. 2-3, 10

Fed. R. Evid. 501 ..................................................................... 34

Ninth Circuit L.R. 28-4 ............................................................. 29, 39

**INTRODUCTION**

This case is but the latest in an ongoing saga by Obeng-Amponsah seeking to contest the validity of a non-judicial foreclosure sale of his house in Alta Loma California. See, e.g., *Obeng-Amponsah v. Mortgage Elec. Registration Sys.*, 2013 Cal. App. Unpub. LEXIS 9204, 2-3 (Cal. App. 4th Dist. Dec. 19, 2013); *Obeng-Amponsah v. Chase Home Fin., LLC*, 2015 U.S. App. LEXIS 14636 (9th Cir. Unpub. Aug. 20, 2015), pet. rehg. den. Nov. 13, 2015. In the present case, Obeng-Amponsah sued attorney Randall D. Naiman (Naiman) and real estate agents Peter Hettinga (Hettinga) and Craig Finlayson (Finlayson) in relation to their encouraging and bringing a state court unlawful detainer case on behalf of US Bank as the entity acquiring the property via non-judicial foreclosure sale. The District Court dismissed the case concluding Obeng-Amponsah's claims were a de facto attempt to re-litigate and challenge the underlying unlawful detainer judgment barred under the *Rooker-Feldman* doctrine. The District Court did not reach Naiman, Hettinga and Finlayson's other grounds for dismissal or the portion of the motion under California's anti-SLAPP statute. Obeng-Amponsah appeals.

Issues 1 through 8 and 10 identified by Obeng-Amponsah in his Appellant's Opening Brief (AOB, pp. 1-2) are all glosses on whether the District Court erred in dismissing the case under the *Rooker-Feldman* doctrine. The allegations of Obeng-Amponsah's Complaint challenging the validity of the underlying unlawful

detainer judgment and his requested relief that the District Court vacate and void the judgment and writ of execution issued by the state court support the District Court's conclusion that this case was a de facto appeal precluded under *Rooker-Feldman*. Indeed, it was also an attempt to continue his attack on the validity of the underlying non-judicial foreclosure and the judgments against him in his federal and state court actions against US Bank. The District Court also properly concluded Obeng-Amponsah's assertions of fraud were not the type of extrinsic fraud contemplated by the limited exception to the *Rooker-Feldman* doctrine. The judgment in favor of Hettinga and Finlayson is properly affirmed for the reasons articulated by the District Court.

The judgment is also properly affirmed on alternative grounds raised in the motions to dismiss and related request to strike the complaint under California's anti-SLAPP statute. In particular, res judicata, collateral estoppel and the related doctrine of merger and bar preclude Obeng-Amponsah's claims. Likewise, the claims arose out of Naiman, Hettinga and Finlayson's petitioning activity in relation to encouraging, bringing, and participating in the unlawful detainer action which implicates the protections of California's litigation privilege in Civil Code § 47(b), California's anti-SLAPP statute, Code of Civil Procedure § 425.16, and the similar federal *Noerr-Pennington* doctrine.

To the extent Obeng-Amponsah also seeks to appeal the court's denial of his post-judgment motion for reconsideration, Hettinga and Finlayson submit this court is without jurisdiction to review the denial. As addressed in the jurisdiction section, Obeng-Amponsah's amended notice of appeal submitted to this court and not filed in the District Court was nevertheless untimely when received by the Ninth Circuit.

Issue 9 identified by Obeng-Amponsah (AOB, p. 2) related to his attempt to subpoena documents from Hettinga and Finlayson prior to the Fed. R. Civ. P. 26 conference is properly disregarded as moot should the court affirm the judgment of dismissal. In addition, appellate review is inappropriate because the District Court never issued an order in relation to Hettinga and Finlayson's motion to quash because it dismissed the case. In the absence of an order, there is nothing for this court to review.

The judgment should be affirmed. Costs on appeal should be allowed in favor of Hettinga and Finlayson.

## STATEMENT OF FACTS

In late December 2004, Obeng-Amponsah purchased the 6735 Pasito Avenue, Alta Loma, California property secured by a loan issued by and trust deed in favor of Finance America, LLC, and listing Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for the lender and lender's successors. 1 AA pp.

29-30, 102-114 [Doc. 3, ¶¶151-158 and Exh. 1]. It was a 30 year loan for $260,000. Id., p. 29 [¶152].

The unrecorded trust deed which Obeng-Amponsah says he received indicated it was a 30 year fixed rate loan. 1 AA pp. 102-103. The recorded deed of trust showed the loan was subject to an adjustable rate rider. Id., pp. 158-159.

Two year later, Obeng-Amponsah received a letter from loan servicer Chase stating the interest rate on his loan would be adjusted starting in February of 2007. 1 AA p. 30 [Doc. 3, ¶159]. Obeng-Amponsah disputed the rate increase on grounds the documents in his possession indicated the loan was a 30 year fixed rate, but Chase refused to acknowledge the fixed rate. Ibid. [¶161]. As a result, in February of 2007, the interest rate adjusted upward and his monthly payments increased. Id. p. 31 [¶¶163-164].

In May of 2007, "unbeknownst to Plaintiff, MERS recorded an assignment of the Deed of Trust (Instrument No. 2007-0304176 …) which granted, assigned and transferred to U.S. Bank" as trustee for the Lehman Brothers Structured Asset Investment Loan Trust SAIL 2005-5 all of the beneficial interest in the deed of trust executed by Obeng-Amponsah. 1 AA pp. 31, 140 [Doc. 3, ¶165 and Exh. 4]. A related Substitution of Trustee was also recorded. Id., pp. 142-143.

In March of 2008, a Notice of Default was recorded against the Pasito Avenue property. 1 AA pp. 32, 145-146 [Doc. 3, ¶173 and Exh. 6]. The Notice of

4

Default indicated that Obeng-Amponsah was in arrears by $10,773.06 as of February 29, 2008. Id., p. 145. According to Obeng-Amponsah, he "vigorously disputed" "that his mortgage was in default at the time US Bank, Chase and MERS caused notice of default to be recorded." Id., p. 32 [¶174]. A substitution of trustee under the deed of trust followed in April of 2008, making First American Loan Star Trustee Services the new trustee. Id., pp. 32, 153 [¶176 and Exh. 8].

"On June 30, 2008, Loanstar" "recorded [a] Notice of Trustee Sale ("NTS") (Instrument No. 2008-0294844 …) which was scheduled for July 21, 2008." 1 AA pp. 34, 156 [Doc. 3, ¶193 and Exh. 9]. In response, Obeng-Amponsah contacted Chase to complain and when Chase provided its copy of the recorded trust deed, Obeng-Amponsah noticed a discrepancy in relation to the adjustable rate rider. Id., pp. 34-35 [¶¶195-200]. The non-judicial foreclosure was thereafter postponed through October of 2008, and then "indefinitely" postponed while a Chase representative investigated Obeng-Amponsah's assertions. Id., p. 36 [¶¶207-212].

On January 29, 2009, Obeng-Amponsah sued Finance America, US Bank, Chase, MERS and Loanstar in the U.S. District Court. (No. 09-cv-00096 GHK (JCx). 1 AA p. 37 [Doc. 3, ¶217]. On February 5, 2009, an Assignment of Deed of Trust was recorded with an indicated effective date back in February of 2008, transferring the deed of trust from US Bank to MERS. Id., pp. 37, 179 [¶218 and Exh. 13]. The day after this assignment was recorded, Obeng-Amponsah's federal

lawsuit was served on US Bank, MERS and Loanstar. Id., p. 38 [¶225]. Then on February 11, 2009, another assignment of deed of trust was recorded with an indicated effective date in April of 2008, and transferring the trust deed from MERS back to US Bank. 2 AA p. 196. The Trustee's Deed Upon Sale was recorded on February 13, 2009, transferring title to US Bank as trustee for Lehman Brothers Structured Asset Investment Loan Trust SAIL 2005-5 based on a trustee sale occurring on February 9, 2009. 1 AA p. 38 [Doc. 3, ¶226]; 2 AA pp. 198-201. Obeng-Amponsah disputed that the trustee sale actually occurred as indicated. 1 AA pp. 38-39 [Doc. 3,.¶¶228-231].

In March of 2009, Naiman filed an unlawful detainer action on behalf of US Bank against Obeng-Amponsah, but voluntarily dismissed the action by April of 2009. 3 AA p. 376 [Doc. 14-1 [¶3]. Meanwhile, Obeng-Amponsah continued to reside in the Pasito Avenue house through 2013 and even rented out rooms in that house. 1 AA pp. 40-41 [Doc. 3, ¶¶244-245, 247].

In June of 2009, Obeng-Amponsah filed a separate state court action against Chase, Finance America, US Bank and MERS, asserting causes of action to set aside the trustee sale, quiet title, cancellation of deed, slander of title, constructive trust, accounting, forgery of trust deed, tortious breach of contract, negligent contribution to fraud, negligent infliction of emotional distress, and injunctive relief. See *Obeng-Amponsah v. Mortgage Elec. Registration Sys., supra,* 2013 Cal.

App. Unpub. LEXIS 9204, 2-3.  By October of 2009, the state court sustained the defendants' demurrer without leave to amend and judgment was entered in favor of the defendants. *Id.*, at p. 4.  That judgment became final in September of 2010 when Obeng-Amponsah's appeal was dismissed and remittitur issued. *Id.*, at pp. 5, 9.  However, he continued to litigate in the superior court seeking to set aside the judgment and appealed the denial of his motions in that regard. *Id.*, at pp. 5-6.

Following the dismissal of Obeng-Amponsah's state court appeal in his case against US Bank and the various lender entities, Obeng-Amponsah claims that a month later, "In or about October 2010, Finlayson attempted to harass and force Plaintiff to vacate his house." 1 AA p. 89 [Doc. 3, ¶555].  In response, Obeng-Amponsah sent Finlayson copies of his federal and state court complaints seeking to undo the non-judicial foreclosure warning him to stay away from the property. Ibid.

Then, "In June 2013," "Finlayson and Hettinga again came to premises [sic] of the house.  Without any solicitation from Plaintiff's niece and her husband, and/or knowing who they were, but with specific intent to intimidate them, and with careless disregard for Plaintiff's privacy, Defendants Finlayson and Hettinga told them the property had been foreclosed on, and they needed to post for sale sign on the property." 1 AA p. 89 [Doc. 3, ¶557].  Hettinga, through his company TWG Investments, Inc., dba The Western Group Real Estate firm is a real estate

company "specializing in handling of sales of properties after foreclosure, and/or obtained through Unlawful Detainer actions …." Id., pp. 81-82 [¶492].

On July 17, 2013, attorney Naiman filed an unlawful detainer action on behalf of US Bank in the San Bernardino County Superior Court. 1 AA p. 41 and 2 AA p. 204 [Doc. 3, ¶247 and Exh. 17]. The unlawful detainer complaint alleged the property was sold to plaintiff US Bank at a trustee's sale in February of 2009. 2 AA p. 205. It further alleged that a three-day written notice to quit and deliver up possession of the property was served on Obeng-Amponsah but he failed and refused to deliver up possession. Ibid. A notice of the Trustee's Deed Upon Sale and the notice to vacate were attached to the unlawful detainer complaint. Id., pp. 208-214.

According to Obeng-Ampsonsah, the unlawful detainer action followed after months of real estate agents Hettinga and Finlayson unsuccessfully trying to get him to leave the property. 1 AA p. 42 [Doc. 3, ¶263]. Hettinga and Finlayson "continuously sought the help of Naiman" to bring the unlawful detainer action. Ibid.

Obeng-Amponsah initially moved to quash service of the UD action seeking to challenge validity of the service. See 2 AA p. 269. Although in the present case, he admitted that on "July 26, 2013, at about 3:50 p.m. while Plaintiff was taking a nap, a process server came to the door of the house, while Plaintiff's niece and

other visitors were in the house. Without asking anyone, or knowing who were in the house, the process server told them that the house had been foreclosed on, and she [sic] there to serve Plaintiff with an Unlawful detainer summons and complaint, among other comments." 1 AA p. 90 [Doc. 3, ¶560]. "Plaintiff went to meet the process server, put her on notice that she had invaded his privacy. The process server told Plaintiff that she was from Defendant Naiman's office. However, the proof of service indicated that she was from Attorney Services of San Dimas, California and was serving documents from Naiman." Ibid. [¶562].

Obeng-Amponsah ultimately answered the unlawful detainer complaint, raising challenges to the validity of non-judicial foreclosure sale. 2 AA pp. 223-226, 228-232. He also challenged limited civil jurisdiction on grounds the property itself was worth more than $50,000. Id., pp. 226-227. He likewise contended the issues related to title and the underlying foreclosure were pending in his state and federal court actions then on appeal in the California appellate court and the Ninth Circuit. Id., p. 227. In sum, his answer along with the 60 affirmative defenses and hundreds of pages of attached exhibits, re-raised the same claims Obeng-Amponsah raised in his prior state court and District Court actions against US Bank, MERS and related defendants seeking to undo the non-judicial foreclosure, e.g., claims of lack of subject matter jurisdiction; lack of standing; alleged violations of California Commercial Code § 3301 and California Civil

Code § 2924; federal and California consumer rights claims; 18 U.S.C. § 1961; and fraud. See 3 AA p. 416 – 4 AA p. 626.

Judgment on the unlawful detainer action was ultimately entered in December of 2013 after US Bank's summary judgment motion was granted. 4 AA pp. 630-631. Finlayson submitted a declaration in support of the summary judgment motion. 1 AA p. 89 [Doc. 3, ¶561].

Obeng-Amponsah appealed the judgment and filed a writ of supersedeas to stay enforcement of the judgment. 4 AA p. 633. The Appellate Division of the San Bernardino County Superior Court denied the writ and issued an order to show cause why the appeal should not be dismissed as untimely. Id. at pp. 633-634. After considering Obeng-Amponsah's response, the appellate division dismissed the appeal as untimely. Id., p. 637.

Obeng-Amponsah claimed that after he was "locked out of his house," Hettinga and Finlayson and others continued to invade his privacy by entering the house and having his belongings removed in relation to enforcement of the judgment. 1 AA p. 90 [Doc. 3, ¶¶563-566]. He also took issue with their attempt to list and sell the property. Ibid.

The Complaint in the present case by Obeng-Amponsah against attorney Naiman and real estate agents Hettinga and Finlayson followed. 1 AA p. 1.

## STATEMENT OF JURISDICTION

While Obeng-Amponsah's Complaint did not contain a specific section setting forth the grounds for federal jurisdiction, his Ninth Cause of Action alleged "federal RICO, pursuant to 18 U.S.C. § 1961 *et seq*." 1 AA p. 80. That was facially sufficient to invoke federal question jurisdiction under 28 U.S.C. § 1331 and to allow for supplemental jurisdiction of his state law claims under 28 U.S.C. § 1367. While Obeng-Amponsah asserts diversity jurisdiction also exists (AOB, p. 1), the allegations of the Complaint show there was no diversity jurisdiction because all parties resided in California and were presumptively Citizens of California. See 1 AA pp. 1-2.

Appellate jurisdiction is proper under 28 U.S.C. § 1291 as to the judgment. The original notice of appeal filed September 29, 2014 was deemed effective upon entry of the court's order denying reconsideration and is therefore timely. 12 AA pp. 2200-2202 [Doc. 68]; Fed. R. App. 4(a)(4)(B)(i). However, to the extent Obeng-Amponsah's amended notice of appeal seeks to challenge the denial of his post-judgment reconsideration motion, that part of his appeal must be found lacking jurisdiction as untimely. Under Fed. R. App. P. 4(a)(4)(B)(ii) and this court's prior order (App. Doc. 6], Obeng-Amponsah was required to file his amended notice of appeal seeking to appeal that order within 30 days of its entry. The District Court's order was entered on January 21, 2015. DCMO, pp. 2, 8 [Doc.

77].  However, Obeng-Amponsah never filed his amended notice of appeal in the District Court as required under Fed. R. App. P. 3(a)(1) and it was received by this court on February 25, 2015 (App. Doc. 6) which is more than 30 days after entry of the District Court's order.

## STATEMENT OF CASE

In April of 2014, Obeng-Amponsah filed this case in the U.S. District Court for the Central District of California. 1 AA p. 1.  He sued attorney Randall D. Naiman for his role as counsel bringing unlawful detainer actions against Obeng-Amponsah. See 1 AA pp. 1, 4-5 [Doc. 3, ¶¶3, 18-21].  He sued real estate agents Hettinga and Finlayson in relation to their role as real estate agents for post-foreclosure owner U.S. Bank, their acts of encouraging Naiman to file the unlawful detainer case, and their actions in conjunction with the prosecution of the UD case. Id., at pp. 2, 16-17, 53-54, 59-60, 62-64, 74, 81-82, 85 [Doc. 3, ¶¶4-5, Section III title, and ¶¶ 329, 360-361, 366-367, 379-389, 450, 492, 524].

## A.    THE COMPLAINT.

Obeng-Amponsah's Complaint for damages arose from what he characterized as a "fraudulent" unlawful detainer action brought on behalf of US Bank as trustee for Lehman Brothers Structured Asset Investment Loan Trust Sail 2005-5 (US Bank) after a non-judicial foreclosure of his house at 6735 Pasito Avenue, Alta Loma, California, in 2009. 1 AA p. 4 [Doc. 3, ¶¶18-19].  He alleged

the non-judicial foreclosure was initiated by MERS and First American Loanstar Trustee Services (Loanstar) in March 2008 on grounds he was in default on his home loan. Id., p. 7 [¶35]. He denied being in default. Ibid. [¶36]. He claimed the Notice of Default was false, perjured, wrongful and void because it was executed by Loanstar as agent for MERS as nominee for beneficiary Finance America, LLC, at a time when Finance America did not exist due to an earlier merger with BNC Mortgage, Inc. Id., pp. 7-8 [¶¶36-47]. He claimed that a variety of related defects at every step of the non-judicial foreclosure process made the subsequent substitution of trustee and non-judicial foreclosure fraudulent, void and without any legal authority. Id., pp. 8-14 [¶¶48-75]. In sum, he contested the validity of the underlying non-judicial foreclosure on the grounds raised in his separate state and federal court cases against US Bank, MERS, Chase and Loanstar.

With specific regard to the claims made in this case, Obeng-Amponsah acknowledged that in February of 2009, MERS and Loanstar issued a trustee's deed upon sale to US Bank as the purchaser of the property at the non-judicial foreclosure sale by way of a credit bid. 1 AA p. 16 [Doc. 3, ¶¶87-89, 91]. But he asserted that Naiman, Hettinga and Finlayson knew or should have known that US Bank did not own and was not the proper owner of the Pasito Avenue property. Ibid. [¶¶90, 94].

13

Obeng-Amponsah thus claimed the unlawful detainer action seeking possession of the property was obtained "through fraud, fraud by theft, intent to defraud, extortion, and mail and wire fraud by Defendants Naiman, Hettinga, Finlayson" and that the conduct "in the aggregate and in the manner executed, constituted a pattern of criminal activity that led to an unlawful detainer judgment and issued writ of possession for the property resulting from Naiman use of forged and fraudulent documents in the unlawful detainer court." 1 AA p. 4 [Doc. 3, ¶19]. He claimed that Naiman, who represented US Bank in the foreclosure action, knew or should have known that US Bank and MERS did not have the legal authority to have enforced and foreclosed on the note and trust deed. Id., pp. 15-16 [¶¶81-86]. He claimed Hettinga and Finlayson, who were the real estate agents for US Bank, likewise knew or should have known that US Bank did not own the note and was never the beneficiary of the deed of trust. Id., pp. 16 [¶94].

Obeng-Amponsah substantively alleged fourteen claims in his Complaint. He did not specifically identify the defendants against whom the first five and eighth claims were asserted against. See, e.g., 1 AA pp. 42, 77.  Hettinga and Finlayson were at least mentioned by name in the First, Third, Fifth and unnumbered injunctive relief claim, and were specifically identified as subject to the Seventh, Ninth, Tenth, Eleventh, and Twelfth causes of action. Id., pp. 42, 50, 59-60, 62-64, 70, 80, 87-89, 91, 95 [Doc. 3, ¶¶263, 311, 360-362, 366, 379-380,

379-389, 431, 477, 543, 554-555, 605]. On the Fifth Cause of Action entitled "Fraud," Hettinga and Finlayson were mentioned in the sub-categories of common law fraud, conspiracy to defraud, mail fraud, wire fraud, bank fraud, extortion, money laundering, and trespassing. Id., pp. 59-60, 62-64 [¶¶361-362, 366, 379-380].

The First Cause of Action contended US Bank lacked capacity to sue in violation of the U.S. Constitution and California Commercial Code and that Naiman, along with his "co-conspirators," failed to present sufficient evidence during the unlawful detainer case to support US Bank's ownership of the property. 1 AA pp. 42-48. He contended US Bank lacked "standing to bring the UD action against Plaintiff" and "Hence, the UD court's judgment and writ of possession were void on their faces and must be vacated and voided." Id., p, 47 [Doc. 3, ¶¶294-295].

The Second Cause of Action contended the "Unlawful Detainer ("UD") court did not have jurisdiction to make any determination in the US Bank's action" on grounds it did not have standing and improperly initiated the case under the court's limited civil jurisdiction when the property was worth more than $50,000.00. 1 AA p. 48 [¶¶298-299]. He asserted Naiman initiated the UD action as a means to "play a fraud on the Court" and to deprive him of the opportunity to

15

expose US Bank's alleged fraud and misconduct. Id., p. 48 [¶¶298-299]. Again, he sought to have the UD judgment vacated and voided. Id., p. 50 [¶¶307-308].

The Third Cause of Action, titled deprivation of equal protection and civil rights, asserted that Naiman, Hettinga and Finlayson seized and converted his property through "fraud by theft, and deprived him of his property without due process and equal protection." 1 AA p. 50, [Doc. 3, ¶311].

The Fourth Cause of Action, entitled fraud, was broken down into allegations of "fraudulent proof of service" and "fraudulent concealment of material facts." 1 AA pp. 50, 54. The fraudulent proof of service count was based on the contention that attached to "Naiman's UD complaint filed on behalf of US Bank was a fraudulent proof of service from a process server." Id., p. 51 [Doc. 3, ¶¶316-318]. The fraudulent concealment claim related to the assertion that Naiman and US Bank relied on the trustee's deed from the non-judicial foreclosure sale to support the UD complaint and Obeng-Amponsah's contention that the various assignments and documents leading up to the trustee's sale were invalid such that the UD judgment "must be vacated and voided." See Id., pp. 55-59 [¶¶335-357].

In the Fifth Cause of Action, Obeng-Amponsah combined various tort theories based on actions occurring as part of the UD action. Common law fraud was alleged on grounds Naiman, Hettinga and Finlayson knew US Bank did not

own the property in relation to the trustee's sale and their declarations and pleadings submitted as part of the UD action were made "with the specific intent the Courts shall rely thereon to defraud the Courts to enable them to steal and dispossess Plaintiff of his property." 1 AA p. 59 [Doc. 3, ¶¶360-362]. The same premise formed the basis for the additional claims of conspiracy to defraud, "common law fraud and extortion," mail fraud, wire fraud, bank fraud, extortion, money laundering and trespass. Id., pp. 60-64.

The Sixth Cause of Action against Naiman, specifically titled "Fraud on the Court," raised the same theory expressed in the Fifth Cause of Action that Naiman knew or should have known of irregularities in the recorded documents leading up to non-judicial foreclosure and that US Bank did not really own the property such that the pleadings filed by Naiman in the UD action perpetrated a fraud on the court. 1 AA pp. 64-70 [Doc. 3, ¶¶392-430]. The claim was based specifically on filings made by Naiman in the UD action. Ibid.

The Seventh Cause of Action asserted claims of fraudulent conveyance against Naiman, Hettinga and Finlayson. 1 AA pp. 70-77. The claim was again based on the notion that the trustee's deed upon sale to US Bank was invalid and that the various lenders and their successors in interest conspired to deprive Obeng-Amponsah of his property through the non-judicial foreclosure process. Id., p. 72-73 [Doc. 3, ¶¶441-447]. "On July 17, 2013, despite his knowledge that the

alleged foreclosure sale and the trustee's deed upon sale were fraud, Naiman with the support and encouragement from Hettinga and Finlayson, voluntarily joined the conspiracy by filing a fraudulent and frivolous UD action on behalf of US Bank to claim ownership and possession of [the] subject [property] by use [of] recorded documents he knew were fraudulently created to obtain judgment of possession." Id., pp. 73-74 [¶449].

The Eighth Cause of Action claimed Naiman should have realized that pooling and servicing agreement that created the securitized trust for which US Bank was the trustee and which obtained the trustee's deed upon sale was improperly formed under New York law. 1 AA pp. 77-78. And, again it was Naiman's act of filing the UD action that formed the basis of the claim. Id., pp. 78-79. Hettinga and Finlayson were mentioned in his assertion that "Naiman ignored such knowledge [that all the transactional documents were null and void] in conspiracy with Hettinga and Finlayson in furtherance of their monetary gains." Id., p. 79 [Doc. 3, ¶475].

The Ninth Cause of Action for federal and California RICO claimed that US Bank, along with Naiman, Hettinga, Finlayson and unknown conspirators "formed an enterprise that was and is an association-in-fact enterprise for the purpose of defrauding individuals, such as Obeng-Amponsah, by foreclosing on property such as the property owned by Obeng-Amponsah, in which US Bank did not hold

ownership interest in the underlying NOTE and thus, did not have the capacity or standing to enforce the rights and/or claims incumbent to the NOTE and DOT." 1 AA p. 80 [Doc. 3, ¶481]. He asserted Naiman's role in the enterprise was the filing and maintaining of the unlawful detainer action. Id., pp. 81, 83-84 [¶¶488, 507-512]. He asserts Hettinga's role in the enterprise was the creation of his real estate brokerage firm, TWG Investments, Inc., dba The Western Group Real Estate, specializing in selling foreclosed properties and that Finlayson's role was as a real estate agent working for Hettinga. Id., pp. 81-82 [¶¶489-490, 492]. He claimed that Naiman, Hettinga and Finlayson "through the use of the Unlawful Detainer Court, the Sheriff's Department, [Hettinga's real estate firm]" used the mail and interstate commerce to "distribute the proceeds of extortion." Id., p. 85 [¶524].

In the Tenth Cause of Action for unjust enrichment, Obeng-Amponsah claimed "Naiman in corroboration with Hettinga and Finlayson successfully prosecuted an UD action when he knew US Bank acquired title of Plaintiff's property through fraud for US Bank." 1 AA p. 88 [Doc. 3, ¶547]. He again challenged the validity of US Bank acquiring the property through non-judicial foreclosure. Ibid. [¶¶548-552].

The Eleventh Cause of Action for invasion of privacy by Obeng-Amponsah alleged that in 2010, Finlayson attempted to harass and force him to leave the house and that Obeng-Amponsah responded by sending a letter with copies of his

state and federal court actions challenging the validity of the non-judicial

foreclosure sale. 1 AA p. 89 [Doc. 3, ¶555]. He alleged Finlayson continued to

drive by the neighborhood, "stopping at times across from Plaintiff's house,

observing the house, and watching Plaintiff's movements in and out of the house"

and that in June of 2013, Hettinga and Finlayson came to the house, while Obeng-

Amponsah was away, and place a for sale sign on the property. Ibid. [¶¶556-557].

"Following their inability to voluntarily get Plaintiff out of the house, they again

contacted Defendant Naiman to file an Unlawful detainer action against Plaintiff,

et al." Ibid. [¶560]. The invasion of privacy claim was further based on service of

process in the UD action, execution of the writ of possession, and based on the

removal of his personal belonging left in the house once the writ of possession was

executed. Id., at p. 90 [¶¶560-566].

The Twelfth Cause of Action for intentional infliction of emotional distress

was likewise based on the unlawful detainer action and the resultant removal of

Obeng-Amponsah from the property. 1 AA pp. 91-94 [Doc. 3, ¶¶571-573, 578-

585, 588-600].

The remaining claims were for injunctive and declaratory relief. 1 AA pp.

94-97. He sought an injunction and declaration undoing the non-judicial

foreclosure, vacating the unlawful detainer judgment, cancelling the writ of

possession, and precluding US Bank and real estate agents Hettinga and Finlayson from selling the property. Ibid. [Doc. 3, ¶¶603-607, 609, 612, 614, 619-621].

The final prayer in Obeng-Amponsah's Complaint sought similar relief that the unlawful detainer action could not proceed forward while his other cases against US Bank and related defendants were pending. 1 AA p. 98 [Doc. 3, Prayer, ¶¶a-b]. He asked the District Court to find "the UD court lacks jurisdiction," to preclude "further enforcement of the UD court's judgment," to find US Bank was without standing to file the UD action, and to enjoin any sale of the property. Id., pp. 98-100 [Prayer, ¶¶c-e, o-t].

Prior to any responsive pleadings from the named defendants, Obeng-Amponsah filed a "Notice of Dismissal" seeking to dismiss the cause of action for declaratory relief, only. 2 AA p. 339 [Doc. 11]. By minute order, the court requested clarification of what Obeng-Amponsah sought to dismiss. See Doc. 13.

**B.    THE MOTIONS TO DISMISS AND ANTI-SLAPP.**

Naiman responded to the Complaint with a combined Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and to strike the state claims under California's anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, California Code of Civil Procedure § 425.16. 2 AA pp. 341-342. The motion to dismiss argued Obeng-Amponsah's claims sought to re-litigate and undue the state court UD judgment such that the *Rooker-Feldman* doctrine, *Younger* abstention, and

*Noerr-Pennington* doctrines applied to bar the claims. Id., pp. 343, 356-362. It

argued the claims were barred by res judicata, collateral estoppel, and California's

litigation privilege of Civil Code § 47(b). Id., pp. 359-360, 363. The RICO claim

was additionally challenged on grounds no private right of enforcement existed in

relation to the various criminal RICO sections referenced in the Complaint that to

the extent there was a limited statutory exception creating a private right of action,

the Complaint failed to state a claim. Id., pp. 365-366. On the anti-SLAPP portion

of the motion, Naiman similarly argued that Obeng-Amponsah's claims were based

on petitioning activity in relation to the UD action in state court and that plaintiff

could not establish a reasonable probability of prevailing. Id., pp. 367-365, 369-

371. The anti-SLAPP portion of the motion was supported by the declaration of

Naiman in relation to his role in prosecuting the UD action. 3 AA pp. 375-377.

    Naiman's motion was also accompanied by a request for judicial notice of

various pleadings from the UD action, as well as orders from Obeng-Amponsah's

appeal of the UD judgment and writ of execution. 3 AA p. 378 – 4 AA p. 639.

    Hettinga and Finlayson joined in Naiman's motion as equally applicable to

them. 4 AA pp. 640-641 [Doc. 17-2]. They also filed their own separate motion to

dismiss for failure to state a claim. 4 AA pp. 642-656 [Docs. 17 and 17-1].

Hettinga and Finlayson's motion addressed additional reasons why Obeng-

Amponsah's Complaint failed to state a claim as to each of the causes of action pled against them. Id., pp. 647-654.

While the motions to dismiss were pending, Obeng-Amponsah filed a supplemental notice clarifying that his prior request for dismissal was solely as to the cause of action for declaratory relief. 4 AA p. 686 [Doc. 22]. Obeng-Amponsah also filed a Motion to Disqualify Judge King. Id., pp. 688-697 [Doc. 20]. The motion was referred to Judge Virginia A. Phillips. Doc. 21. Judge Phillips denied the motion. DCMO, pp. 86-88 [Doc. 23].

Meanwhile Obeng-Amponsah failed to timely file opposition to the motions to dismiss, so Naiman, Hettinga and Finlayson submitted replies alerting the court to the absence of a timely opposition. 4 AA pp. 699-706 [Docs. 25, 28]. Obeng-Amponsah responded with a request to continue the hearing and a response to the replies asserting he was deceived into believing he obtained a continuance to oppose the motions. Docs. 29 and 30; see 4 AA p. 715 [Doc. 30]. The court granted the requested continuance. Doc. 32.

Obeng-Amponsah's opposition to the motions to dismiss and anti-SLAPP followed. 5 AA pp. 849-876 [Docs. 34 and 36]. He included a declaration in opposition. Id., pp. 878-903 [Doc. 35]. He argued Rooker-Feldman doctrine should not apply on grounds a federal court may entertain a collateral attack on a state court judgment procured through "'fraud, deception, accident, or mistake.'"

Id., p. 863 [Doc. 36]. He argued that his case properly alleged fraud in the procurement of the summary judgment and writ of possession in the UD action. Id., pp. 864-865. He argued the court should find the first prong of the anti-SLAPP test related to petitioning activity was not established because the filing of the UD action and actions taken as part of the litigation to obtain possession of the property constituted a fraud on the UD court and were therefore not deserving of anti-SLAPP protection. Id., pp. 865-866. He argued res judicata and collateral estoppel did not apply because he was denying the UD court had jurisdiction. Id., pp. 867-868. He argued the court could vacate, void and set aside the UD court's judgment under Fed. R. Civ. P. 6(a) and California Code of Civil Procedure § 473 on grounds the UD court lacked jurisdiction, US Bank lacked standing to sue, asserting the service of the three day notice as part of the UD action was fraudulent and that the UD action was itself a sham. Id., pp. 868-874. He requested the court deny the motions and alternatively to grant him leave to amend. Id., p. 876.

Replies by Naiman, Hettinga and Finlayson followed. 7 AA pp. 1244-1255, 1257-1259 [Docs. 41, 44].

Obeng-Amponsah responded by filing an amended opposition and additional documents seeking to show alleged fraud in relation to the filings in the UD action. See 7 AA p. 1270 – 8 AA p. 1412 [Docs. 49-52].

24

The motions to dismiss were heard by Magistrate Judge Patrick J. Walsh who issued a report and recommendation that the court grant the motions and dismiss the case with prejudice. DCMO, pp. 69-76. The Magistrate concluded Obeng-Amponsah's claims constituted a de facto appeal of the state court's rulings in the UD action such that Rooker-Feldman doctrine applied to bar the claims. Id., pp. 73-75. To the extent Obeng-Amponsah asserted the fraud exception to *Rooker-Feldman*, it was noted the exception related to extrinsic fraud that convinces a party to not participate in the proceedings, but in the present matter Obeng-Amponsah knew about the UD action and actively litigated the case, including his assertions that the various documents proffered in support of ownership and the right to obtain possession were fraudulent. Id., p. 75. Judge Walsh concluded Obeng-Amponsah could not cure the defect such that the motion to dismiss should be granted without leave to amend. Id., p. 76. Finally, Judge Walsh concluded that since the *Rooker-Feldman* ground was adequate to dispose of the case it need not and did not reach the additional grounds posited by the defense. Ibid.

Obeng-Amponsah objected to the report and recommendation of the Magistrate Judge. 8 AA pp. 1413-1424 [Doc. 55]. His primary argument was Rooker-Feldman should not apply because his claims sufficiently independent from the underlying UD action and eviction order. Id., pp. 1416-1422. Hettinga and Finlayson replied that Obeng-Amponsah's objections did not properly address

the Magistrate Judge's findings and essentially sought to re-argue issues already raised in his original opposition. Id., pp. 1431-1432 [Doc. 56].

On August 29, 2014, the District Court issued its order accepting the report and adopting the findings, conclusions and recommendations of the Magistrate Judge. DCMO, p. 57 [Doc. 57].

## C. THE JUDGMENT OF DISMISSAL AND POST-JUDGMENT PROCEEDINGS.

Judgment of dismissal was entered on August 29, 2014. DCMO p. 53 [Doc. 58].

On September 12, 2014, Obeng-Amponsah filed an objection and motion to vacate the order and judgment dismissing the complaint and requesting leave to file an amended complaint. 9 AA pp. 1548-1572 [Docs. 72-74]. The court initially struck the filing. 12 AA pp. 2163-2165 [Docs. 63, 66-67].

On September 29, 2014, Obeng-Amponsah filed his notice of appeal. 12 AA pp. 2200-2202 [Doc. 68]. This court then issued an order directing the District Court to determine whether Obeng-Amponsah's motion was a valid post-judgment motion, to rule on the motion, and that Obeng-Amponsah must thereafter file a new timely notice of appeal if he also intended to appeal the district court's ruling on his post-judgment motion "to vacate and void" the dismissal order. DCMO, pp. 13-18 [App. Doc. 4].

After this court's order issued, Magistrate Judge Walsh considered Obeng-Amponsah's motion to be one seeking reconsideration. DCMO, p. 11 [Doc. 75]. Judge Walsh prepared and submitted a proposed order denying the motion for reconsideration which was approved and adopted by District Court Judge King. DCMO, pp. 4-8 [Doc. 77]. The order denying reconsideration was entered on January 21, 2015. Ibid.

On February 25, 2015, Obeng-Amponsah's Amendment to Notice of Appeal was received by this court. 12 AA pp. 2219-2222 [App. Doc. 6]. It was never filed in the District Court. The amendment reads as seeking to add a challenge to the District Court's post-judgment orders including the denial of reconsideration. See, Id., p. 2221.

## STANDARDS OF REVIEW

The *Rooker-Feldman* doctrine provides that a federal court does not have subject matter jurisdiction to hear a direct appeal from a final judgment of a state court. See *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1029 (9th Cir. 2005); *Maldonado v. Harris*, 370 F.3d 945, 949 (9th Cir. 2004). Dismissals based on *Rooker-Feldman* are reviewed de novo. See *Maldonado*, 370 F.3d at 949; *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1139 (9th Cir. 2004); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).

The district court's decision granting the motions to dismiss may be affirmed on any ground supported by the record, even if not relied upon by the District Court. See *Campbell v. Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 n.4 (9th Cir. 2011); *Forest Guardians v. U.S. Forest Serv.,* 329 F.3d 1089, 1097 (9th Cir. 2003). Accordingly, the decision may be affirmed, "even if the district court relied on the wrong grounds or wrong reasoning." *Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998) (citation omitted).

## LEGAL DISCUSSION

## I.

## THE DISTRICT COURT PROPERLY DISMISSED THE CASE BASED ON APPLICATION OF THE *ROOKER-FELDMAN* DOCTRINE

Issues 1-8 and 10 identified by Obeng-Amponsah in his Appellant's Opening Brief (AOB, pp. 1-2) are all glosses on whether the District Court erred in dismissing the case under the *Rooker-Feldman* doctrine. Under *Rooker-Feldman*, federal district courts do not have jurisdiction to consider actual or de facto appeals of state court judgments. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012); *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003); *Manufactured Home Communities Inc. v. City of San Jose, supra*, 420 F.3d at p. 1029; *Maldonado v. Harris, supra*, 370 F.3d at p. 949.

The Answer Brief by Naiman extensively addresses why the District Court was correct in applying *Rooker-Feldman* to this case and why Obeng-Amponsah's arguments seeking to avoid application of the doctrine fail. Answer Brief by Naiman, pp. 17-21. Hettinga and Finlayson accordingly adopt that portion of Naiman's Answer Brief as equally applicable to them. See Ninth Circuit Local Rules, L.R. 28-4.

Hettinga and Finlayson further submit that *Rooker-Feldman* applies to this case for additional reasons. Obeng-Amponsah's Complaint, as confirmed by the arguments in his Appellant's Opening Brief (AOB, pp. 11-27), demonstrates that underlying premise of his claims is the assertion the non-judicial foreclosure sale was invalid which in turn invalidates the UD judgment and made Naiman, Hettinga and Finlayson's pursuit of the UD judgment fraudulent, tortious and a violation of RICO statutes. See, e.g. 1 AA pp. 42-48, 50, 55-56, 59-60, 65-68, 73, 80, 85, 88 [Doc. 3, ¶¶263-264, 272-295, 298-299, 311, 336-341, 360-362, 366, 394-419, 445-449, 481, 522-524, 547-551]. The problem for Obeng-Amponsah is that his litigation against the various lending entities and US Bank seeking to challenge the validity of the deed upon trustee's sale was resolved against him. *Obeng-Amponsah v. Mortgage Elec. Registration Sys., supra,* 2013 Cal. App. Unpub. LEXIS 9204, 2-3, 5; *Obeng-Amponsah v. Chase Home Fin., LLC, supra*, 2015 U.S. App. LEXIS 14636. His continuation of the same arguments seeking to unwind the foreclosure

sale was another attempt at a de facto appeal of, at a minimum, the state court judgment against him in his case against US Bank.

Likewise, the fact that Obeng-Amponsah's Complaint made multiple requests for the District Court to grant relief in the form of voiding the UD judgment and the non-judicial foreclosure sale support the conclusion that his claims were a de facto appeal of the UD judgment and the judgments against him in his prior state and federal court cases against US Bank. See, e.g., 1 AA pp. 98-100 [Doc. 3, Prayer at ¶¶a-t]; AOB, pp. 13-22. The arguments made in his Opening Brief further emphasize the fact that the lawsuit was intended to obtain a reversal of the UD judgment and writ of possession. AOB, pp. 16-17.

The District Court properly found Obeng-Amponsah's claims were a de facto attack on the underlying state court UD judgment such that *Rooker-Feldman* doctrine applied. The judgment of dismissal should be affirmed.

## II.

## OBENG-AMPONSAH'S CLAIMS ARE BARRED BY RES JUDICATA, COLLATERAL ESTOPPEL, AND THE DOCTRINE OF MERGER AND BAR

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the

30

second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 5 (U.S. 1979); accord *Columbus Line, Inc. v. Gray Line Sight-Seeing Companies Associated, Inc.,* 120 Cal.App.3d 622, 628 (Cal.App. 1981) (*Columbus Line*). Res judicata and collateral estoppel applies to judgments following the grant of summary judgment. *Columbus Line, supra,* 120 Cal.App.3d at p. 629. Whether the prior judgment was correct or not is inconsequential – "for purposes of application of the doctrine of res judicata, an erroneous judgment is as conclusive as a correct one." *Id.*, at p. 629 fn. 5.

"[I]n its collateral estoppel effect, the doctrine [of res judicata] may also preclude a party to prior litigation from redisputing issues therein decided against him, even where those issues bear on different claims raised in a later case. Moreover, because the estoppel need not be mutual, it is not necessary that the earlier and later proceedings involve the identical parties or their privies. Only the party against whom the doctrine is invoked must be bound by the prior proceeding. [Citations.]" *Vandenberg v. Superior Court,* 21 Cal.4th 815, 828 (Cal. 1999). The doctrine of collateral estoppel "rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and

should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." *Rodgers v. Sargent Controls & Aerospace,* 136 Cal.App.4th 82, 89-90 (Cal. App. 2006).

The application of res judicata and collateral estoppel "in a given case depends upon an affirmative answer to three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Columbus Line, supra*, 120 Cal.App.3d at p. 628; accord *Stratosphere Litig. LLC v. Grand Casinos, Inc.,* 298 F.3d 1137, 1143 n. 3 (9th Cir. 2002).

"'Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.'" *Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003), quoting from *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998). This concept is generally

referred to merger and bar because all claims that could have been litigated in the prior action are merged in and barred by the judgment.

Naiman's Answer Brief addresses why Obeng-Amponsah's present case is barred under the doctrines of res judicata and collateral estoppel based on the underlying final UD judgment. Naiman Answer Brief, pp. 21-23. Hettinga and Finlayson adopt that portion of Naiman's Answer Brief as equally applicable to them. See Ninth Circuit Local Rules, L.R. 28-4.

But again, there are additional reasons why res judicata and collateral estoppel apply to bar Obeng-Amponsah's claims in the present case. As discussed above, the underlying premise of Obeng-Amponsah's claims is the assertion the non-judicial foreclosure sale was invalid which in turn invalidates the UD judgment and made Naiman, Hettinga and Finlayson's pursuit of the UD judgment fraudulent, tortious and a violation of RICO statutes. Obeng-Amponsah's litigation against US Bank challenging the validity of its acquiring title through the non-judicial foreclosure sale was adjudicated against him by the state and federal courts. *Obeng-Amponsah v. Mortgage Elec. Registration Sys., supra,* 2013 Cal. App. Unpub. LEXIS 9204, 2-3, 5; *Obeng-Amponsah v. Chase Home Fin., LLC, supra*, 2015 U.S. App. LEXIS 14636. His continuation of the same arguments seeking to unwind the foreclosure sale are barred under res judicata and collateral estoppel. Thus, no matter what Obeng-Amponsah might try to argue, US Bank

was and is the lawful owner of the property because Obeng-Amponsah's quiet title and related claims against US Bank were resolved in its favor. As the state court judgment was final by 2010 (*Obeng-Amponsah v. Mortgage Elec. Registration Sys., supra,* 2013 Cal. App. Unpub. LEXIS 9204, 5), Naiman, Hettinga and Finlayson's actions in bringing the UD action on behalf of US Bank were valid and proper as a matter of law and Obeng-Amponsah could not re-litigate the validity of the underlying ownership. The judgment should be affirmed for these additional reasons.

## III.

## OBENG-AMPONSAH'S CLAIMS ARE BARRED BY CALIFORNIA'S LITIGATION PRIVILEGE

In civil actions for which state law provides the rule of decision, a federal court looks to state law for privilege rules. See Fed. R. Evid. 501. Here, Obeng-Amponsah cannot recovery on his various claims because they are barred by the absolute litigation privilege set forth in California Civil Code § 47(b) which applies to communications "'(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) [which have] some connections or logical relation to the action.'" *Merlet v. Rizzo,* 64 Cal.App.4th 53, 65 (Cal. App. 1998) [citation omitted]. The privilege applies to matters that occur outside the court so long has it related to the

litigation. *Woodcourt II, Ltd. v. McDonald Co.,* 119 Cal.App.3d 245, 249-250 (Cal. App. 1981) [notice of filing of notice of lis pendens is privileged].

The privilege also applies to actions in preparation for litigation even when litigation has not yet been filed. *Rubin v. Green*, 4 Cal.4th 1187, 1194 (Cal. 1993). "It is established that demands to resolve disputes made in anticipation of litigation are privileged." *Financial Corp. of America v. Wilburn*, 189 Cal.App.3d 764, 777 (Cal. App. 1987). It extends to preliminary conversations and interviews between prospective witnesses if they are some way related to or connected with a contemplated action. *Id.*, pp. 777-778.

"[T]he statutory privilege accorded to statements made in judicial proceedings . . . applies to virtually all other causes of action, with the exception of an action for malicious prosecution. [Citation.] Thus, the privilege will defeat claims of invasion of privacy [citations] and intentional infliction of emotional distress. [Citation.]" *Ribas v. Clark*, 38 Cal.3d 355, 364 (Cal. 1985). It bars conspiracy related claims where a portion of the alleged acts as part of the conspiracy involves litigation or participation in litigation. *Thompson v. Cal. Fair Plan Ass'n*, 221 Cal.App.3d 760, 767-768 (Cal. App. 1990). It bars claims that pleading submitted in the course of litigation and testimony was false, perjured or suborned perjury. See *Cedars-Sinai Medical Center v. Superior Court*, 18 Cal.4th 1, 9-10 (Cal. 1998) [also confirming "no civil remedy in damages against a witness

who commits perjury when testifying," no tort for concealment or withholding of evidence, no action for fraud on theory of presentation of false evidence, no emotional distress claim based on actions occurring as part of litigation]. It likewise bars claims akin to unfair competition where they are based on pre-litigation and litigation related activity. *Rubin v. Green, supra*, 4 Cal.4th at p. 1204.

In *Bisno v. Douglas Emmett Realty Fund 1988*, 174 Cal.App.4th 1534, 1551-1552 (Cal. App. 2009), the court held the litigation privilege barred claims arising out of an unlawful detainer case where the plaintiff contended it was part of a wrongful eviction. The *Bisno* Court also held the litigation privilege applied to bar claims related to the three day notice. *Id.*, at p. 1552.

The litigation privilege applies to bar claims based on enforcement of a judgment, inclusive of writs related to enforcement of a judgment. See *Tom Jones Enterprises, Ltd. v. County of Los Angeles*, 212 Cal.App.4th 1283, 1294-1295 (Cal. App. 2013). Its bar includes claims arising out of the alleged wrongful levy of assets, improper levy on exempt assets, claims of wrongful levy based on invalid judgment, statements made in relation to obtaining a writ of execution, applying for a writ of execution, claims of interference with property rights based on enforcement activities and acts carried out pursuant to the directive of the writ. *Ibid.*

Finally, the litigation privilege is not limited to parties to the litigation. See *Tom Jones Enterprises, Ltd. v. County of Los Angeles, supra*, 212 Cal.App.4th at p. 1295. The person "'need merely be connected or related to the proceedings'." *Ibid.* [internal citations omitted].

As previously addressed, Obeng-Amponsah's causes of action were all based on Hettinga and Finlayson's "encouragement" and participation in supporting the prosecution of the UD action. See, e.g., 1 AA pp. 42, 48, 50, 53-54, 59, 74, 76, 85, 88-91 [Doc. 3, ¶¶263, 299, 311, 329, 360-361, 450, 458, 523-524, 546, 560-563, 571]. The claims are barred by the litigation privilege.

## IV.

## CALIFORNIA'S ANTI-SLAPP STATUTE AND THE SIMILAR FEDERAL *NOERR-PENNINGTON* DOCTRINE PROVIDE ALTERNATIVE GROUNDS TO AFFIRM THE JUDGMENT

"Every circuit that has considered the issue has agreed with our conclusion in *Newsham* that anti-SLAPP statutes like California's confer substantive rights under *Erie*" and apply to state claims brought in federal court. *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1184 (9th Cir. 2013). Similarly, as addressed in Naiman's Answer Brief, the *Noerr-Pennington* doctrine applies to grant immunity for actions arising out of petitioning activity. Naiman Answer Brief, pp. 24-27. Both operate to protect petitioning activity, as well as "activity incidental to and in

anticipation of petitioning activity. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

Obeng-Amponsah's claims all arise out of and relate to Naiman, Hettinga and Finlayson's actions in bringing and pursuing the UD action. See, e.g., 1 AA pp. 42, 48, 50, 53-54, 59, 74, 76, 85, 88-91 [Doc. 3, ¶¶263, 299, 311, 329, 360-361, 450, 458, 523-524, 546, 560-563, 571]. This satisfied the "arising from" prong of the anti-SLAPP statute and satisfied the requirements of the *Noerr-Pennington* doctrine. Under the anti-SLAPP statute, it became Obeng-Amponsah's burden to establish a reasonable probability of prevailing on each of his causes of action. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999). This he could not do because Civil Code § 47(b) and *Noerr-Pennington* provide immunity for the pre-litigation and litigation related conduct and petitioning activity which forms the basis of Obeng-Amponsah's claims against Naiman, Hettinga and Finlayson. See Section III above and Naiman Answer Brief at pp. 25-27. The judgment is properly affirmed on these additional grounds.

38

## V.

## JOINDER IN NAIMAN'S ADDITIONAL ARGUMENTS IN SUPPORT OF AFFIRMING THE JUDGMENT

Naiman's Answer Brief adequately addresses why Obeng-Amponsah could not state RICO claims and why leave to amend was properly denied. Naiman Answer Brief, pp. 30-32. Hettinga and Finlayson adopt that portion of Naiman's Answer Brief as equally applicable to them. See Ninth Circuit Local Rules, L.R. 28-4.

## VI.

## THE SUBPOENA AND RELATED DOCUMENT PRODUCTION ISSUE IS NOT SUBJECT TO REVIEW

Obeng-Amponsah' ninth issue for review relates to subpoenas for production of documents issued to Hettinga and Finlayson. AOB, pp. 2, 40-43. Review from a final judgment may generally include a review of a district court's interim discovery order. See *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987). But, there must necessarily have been an order or final ruling on the matter issued for the appellate court to review. See, e.g., *Kadar Corp. v. Milbury*, 549 F.2d 230, 236 (1st Cir. 1977). Here, no order ever issued in relation to Hettinga and Finlayson's motions to quash and for a protective order because the District Court ended up dismissing the case. See Docs. 15-16, 18-19, 24, 26-27, 29, 31-33,

37-40, 47-49. This is because the District Court ended up dismissing the case thereby presumptively mooting the need to address the discovery motions. See Docs. 54, 57-58. In any event, because there was no order issued, there is no ruling for this court to review.

## CONCLUSION

The judgment should be affirmed for the reasons set forth above and in appellee Naiman's Answer Brief. Costs on appeal should be awarded to appellees.

DATED: November 20, 2015     **MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By: _____/s/ Darin L. Wessel_____
Darin L. Wessel
Attorneys for Appellees Craig Finlayson
and Peter Hettinga

**CERTIFICATION OF BRIEF FORMAT**

Pursuant to Fed. R. App. 32(a)(7), I do hereby certify that this Appellee's

Answer Brief was produced using Word and that the brief contains 9066 words

based on Word's word count.

DATED:  November 20, 2015          Respectfully submitted,

                                  **MANNING & KASS**
                                  **ELLROD, RAMIREZ, TRESTER LLP**


                                  By:  _____/s/ Darin L. Wessel_____
                                       Darin L. Wessel
                                       Attorneys for The Neiman Marcus Group,
                                       Inc.

**STATEMENT OF RELATED CASES**

Counsel for Appellees Peter Hettinga and Craig Finlayson is informed that Appellant Kofi Obeng-Amponsah has the following related appeals in the Ninth Circuit:

Case No. 11-55397 – Obeng-Amponsah v. Chase Home Finance, LLC et al.

Memo. Dispo. issued August 20, 2015, pet. rehg. den. Nov. 13, 2015.

Case No. 14-56369 – Obeng-Amponsah v. U.S. Bank N.A., et al.

Briefing pending.

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2015, I electronically

filed the foregoing  ANSWER BRIEF BY APPELLEES PETER HETTINGA and

CRAIG FINLAYSON**.** with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to the following:

| | |
|---|---|
| John P. Girarde, Esq.<br>Murphy, Pearson, Bradley &<br>Feeney, PC<br>88 Kearny Street, 10th Flr.<br>San Francisco, CA | Counsel for Appellee Randall D.<br>Naiman |
| Ann Marie Thompson, Esq.<br>Sunderland McCutchan, LLP<br>11770 Bernardo Plaza Ct.<br>Ste. 310<br>San Diego, CA 92128 | Co-counsel for Appellees Peter<br>Hettinga and Craig Finlayson |

I also certify the document and a copy of the Notice of Electronic Filing was

served via mail on the following non-CM/ECF participants:

| | |
|---|---|
| Kofi Obeng-Amponsah<br>P.O. Box 3607<br>Ontario, CA 91761 | Pro Se Appellant/Plaintiff |

/s Darin L. Wessel
Darin L. Wessel